**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
SETH MITCHELL,

                        Plaintiff,

                *-against-*

Macy's, Inc.; Bloomingdale's, Inc.;
Bank of America Corporation; CIGNA
Corporation; American Arbitration
Association; Local 3 RWDSU/UFCW
United Storeworkers Union;
Terrance P. Laughlin;
Karen Hoguet; Jeffrey Kantor;
Tony Spring; Elisa Garcia, Esq.;
Nicole Jones, Esq.; Stephen Von Wahlde, Esq.;
Ann Lesser, Esq.; Michelle Ronquillo; Susan
Wright; Richard Law; Santiago Fernandez, Esq.;
Heather Santo; Susan Schiller; Elyse Vogel;
Ariana Starace; Brittany Pressner; Robin
Goodell; Susan Shekerchi; Cynthia Clemmons;
Sharen Freeling; Brenda Moses; Paula Sabatelli;
Aahren DePalma, Esq.; Bernard Manning;
John & Jane Does 1-1000,
                     Defendants.
-------------------------------------------------------X

17-CV-1845 (CM)

SECOND AMENDED
COMPLAINT

**Honourable Colleen McMahon,**
Chief United States District Judge,
Presiding

*Jury Trial Requested*

# SECOND AMENDED COMPLAINT

## I.   PARTIES

### A.   Plaintiff Information

1.   Seth Mitchell, **Self-Represented, Sole Claimant, Plaintiff-Prosecutor**
208 East 51st Street, Suite 391, New York County, New York, 10022
Direct dial: 1.646.801.2045
Email address: seth.mitchell@ashemllc.co

### B.   Defendants' Information

#### a.   *Entity Defendants*

1.   Macy's, Inc. (Ticker: M)
7 West 7th Street, Cincinnati, Ohio, 45202

2.   Bloomingdale's, Inc. (wholly-owned division of Macy's, Inc.)
1000 Third Avenue, New York County, New York, 10022

3.   Bank of America Corporation (Ticker: BAC)
Bank of America Corporate Center
100 North Tryon Street, Charlotte, NC 28255

4.   CIGNA Corporation (Ticker: CI)
900 Cottage Grove Road, Bloomfield, Connecticut, 06002

5.   American Arbitration Association
120 Broadway, 21st Floor, New York County, New York, 10271

6.   Local 3 RWDSU/UFCW United Storeworkers Union
31-21 31st Street 4th Floor, Astoria, New York, 11106

#### b.   *Individual Defendants*

7.   Terrance P. Laughlin**,** Vice Chairman, Head of Global Wealth and
Investment Management, Bank of America Corporation
One Bryant Park, 115 West 42nd Street, New York County, New York, 10036
Direct dial: 1.212.764.0694

8.   Karen M. Hoguet, Chief Financial Officer, Macy's, Inc.
151 West 34th Street, New York County, New York, 10001
Direct dial: 1.212.494.1615
Email: Karen.Hoguet@macys.com

9.      Jeffrey A. Kantor, Chief Stores & Human Resources Officer
        151 West 34th Street, New York County, New York, 10001
        Direct dial: 1.212.494.1615
        Email: Jeffrey.kantor@macys.com

10.     Tony Spring, Chairman & Chief Executive Officer, Bloomingdale's, Inc.
        1000 Third Avenue, Floor 7, New York County, New York, 10001
        Direct dial: 1.212.705.2455
        Email: tony.spring@bloomingdales.com

11.     Elisa D. Garcia, Esq., Chief Legal Officer, Macy's, Inc.
        151 West 34th Street, New York County, New York, 10001
        Direct dial: 1.212.494.1615
        Email: elisa.garcia@macys.com

12.     Nicole Jones, Esq., Executive Vice President & General Counsel, CIGNA
        900 Cottage Grove Road, Bloomfield, Connecticut, 06002
        Direct dial: 1.860.226.6000
        Email: niclole.jones@cigna.com

13.     Stephen Von Wahlde, Esq., VP & Assistant General Counsel, Macy's, Inc.
        7 West 7th Street, Cincinnati, Ohio, 45202
        Direct dial: 1.513.579.7389
        Email: Stephen.von.wahlde@macys.com

14.     Ann Lesser, Esq.; Vice President, American Arbitration Association
        120 Broadway, 21st Floor, New York County, New York, 10271
        Direct dial: 1.212.484.4084
        Email: lessera@adr.org

15.     Michelle Ronquillo, Operating Vice President (HR), Bloomingdale's, Inc.
        1000 Third Avenue, 3rd Floor, New York County, New York, 10022
        Direct dial: 1.212.705.2455
        Email: michelle.ronquillo@bloomingdales.com

16.     Susan Wright, Director (HR), Bloomingdale's, Inc.
        1000 Third Avenue, 3rd Floor, New York County, New York, 10022
        Direct dial: 1.212.705.2044
        Email: susan.wright@bloomingdales.com

17.     Richard Law, (HR), Bloomingdale's, Inc.
        1000 Third Avenue, 3rd Floor, New York County, New York, 10022
        Direct dial: 1.212.705.2455
        Email: Richard.law@bloomingdales.com

18. Santiago Fernandez, Esq., Senior Counsel, Macy's, Inc.
    11 Penn Plaza, 11th Floor, New York County, New York 10001
    Direct dial: 1.646.429.7507
    Email: Santiago.A.Fernandez@macys.com

19. Heather Santo, Assistant Vice President, American Arbitration Association
    120 Broadway, 21st Floor, New York County, New York, 10271
    Direct dial: 1.866.686.6024
    Email: santoh@adr.org

20. Susan Schiller, Divisional Sales Manager, Bloomingdale's, Inc.
    1000 Third Avenue, 6th Floor, New York County, New York, 10022
    Direct dial: 1.212.705.6308
    Email: susan.schiller@bloomingdales.com

21. Elyse Vogel, Senior Manager, Accommodation/Disability Leave
    Management, Macy's, Inc.
    7 West 7th Street, Cincinnati, Ohio
    Direct dial: 1.513.579.7990
    Email: elyse.vogel@macys.com

22. Ariana Starace, Sales, Bloomingdale's, Inc.
    1000 Third Avenue, 6th Floor, New York County, New York, 10022
    Direct dial: 1.212.705.6308
    Email: Ariana.starace@bloomingdales.com

23. Brittany Pressner, Management Trainee, Bloomingdale's, Inc.
    1000 Third Avenue, 6th Floor, New York County, New York, 10022
    Direct dial: 1.212.705.3386
    Email: Brittany.pressner@bloomingdales.com

24. Robin Goodell, Senior Technical Specialist, Macy's, Inc.
    7 West 7th Street, Cincinnati, Ohio, 45202
    Direct dial: 1.513.579.7966
    Email: robin.goodell@macys.com

25. Susan Shekerchi, Sales, Bloomingdale's, Inc.
    1000 Third Avenue, 6th Floor, New York County, New York, 10022
    Direct dial: 1.212.705.3386
    Email: Susan.shekerchi@bloomingdales.com

26. Cynthia Clemmons, Sales, Bloomingdale's, Inc.
    1000 Third Avenue, 6th Floor, New York County, New York, 10022

Direct dial: 1.212.705.3386
Email: Cynthia.clemmons@bloomingdales.com

27.    Sharen Freeling, Sales, Bloomingdale's, Inc.
1000 Third Avenue, 6th Floor, New York County, New York, 10022
Direct dial: 1.212.705.3386
Email: sharen.freeling@bloomingdales.com

28.    Brenda Moses, Sales, Bloomingdale's, Inc.
1000 Third Avenue, 6th Floor, New York County, New York, 10022
Direct dial: 1.212.705.3386
Email: brenda.moses@bloomingdales.com

29.    Paula Sabatelli, Sales, Bloomingdale's, Inc.
1000 Third Avenue, 6th Floor, New York County, New York, 10022
Direct dial: 1.212.705.3386
Email: paula.sabatelli@bloomingdales.com

30.    Aahren DePalma, Esq., Counsel, Law Department, Macy's, Inc.
11477 Olde Cabin Road, Suite 400, Creve Coeur, Missouri, 63141
Direct dial: 1.314.342.6454
Email: aahren.depalma@macys.com

31.    Bernard Manning, Sales, Bloomingdale's, Inc.
1000 Third Avenue, 6th Floor, New York County, New York, 10022
Direct dial: 1.212.705.3386
Email: bernard.manning@bloomingdales.com

32.    John & Jane Does 1-1000

## II.    STATEMENT OF CLAIM

### A.    Places & Dates of Occurrence

1.    Bloomingdale's, Inc., 1000 Third Avenue, New York County, New York, 10022 (March 2015 – Present);

2.    208 East 51st Street, New York County, New York, 10022 (January 2016 – Present); and

3.    Additional incident locales, if any, to be provided upon results of discovery process.

**B.      Statement of Facts in Support of Claim**

**1.      PLAINTIFF'S BONE FIDES**

Good Plaintiff–Prosecutor is Seth Mitchell, a naturally–borne Citizen of the United States of America from Queens County, New York.  He is first-borne Grand Son to Henry M. Sandler, United States Veteran Patriot (Bronze Star Medal, Purple Heart). He earned his Bachelor of Science in Economics from Cornell University (Dean's List) (*Ithaca, New York*) and his Master of Business Administration from the Wharton School of the University of Pennsylvania (*Philadelphia, Pennsylvania*). He retains the investment industry's most prestigious, sought-after, and difficult to obtain certification, The Chartered Financial Analyst ("CFA") designation.  He has maintained gainful employment with such top-notch global financial services firms as The Goldman Sachs Group, Inc. where he was employed in the Firm's highly prestigious and lucrative Global Special Situations Group, in the Asia Pacific region where he lived and worked for five (5) years.  He is formally credit – trained and is an expert in the research, analysis, valuation, and adjudication of a variety of corporate and legal claims.

He has significant hands-on litigation experience, having asserted a variety of meritorious civil and criminal litigation claims in such matters as *Seth Mitchell v. Cantor Fitzgerald, L.P., et al.* (New York County Index No. 108597/2011, $US13 Million Default Claims, uncured) and *Seth Mitchell v. New York University, et al.* (New York County Index No. 150622/2013, $US49 Million Default Claims, uncured).

He successfully completed a United States Federal civilian employment assignment, having worked as a Field Operations Supervisor for the United States Department of Commerce 2010 Census activities where he managed approximately 100 employees in efficaciously completing all large-scale project operations in the field on a timely basis.

**2.      EMPLOYMENT WITH MACY'S, INC.**

On 2 March 2015, good Plaintiff-Prosecutor began employment as an onsite

client–facing Sales "*Generalist*" in Macy's, Inc.'s Bloomingdale's, Inc.'s Division's Flagship ("headquarters") Store in the Luxury Home Products Department, located at Floor 7, 1000 Third Avenue, New York County, New York, 10022; his Role required him to interact personally with, and make complex product recommendations for, a well-heeled and sophisticated roster of global high – net work clientele which included ultra-wealthy individuals and families, corporate clients such as designers and interior decorators, and global governmental officials.   He received neither base salary nor any other stable weekly compensation, instead earning only a flat 6% commission on his "net" sales (after client product return revenues are subtracted), even though most other Luxury Home Store salespeople benefitted from lucrative formal arrangements with Bloomingdale's, Inc. and its product vendors ("*Specialist*" roles where such salespeople earned vendor-paid weekly salaries and/or performance-based bonuses in addition to the Bloomingdale's, Inc. 6% commission on net sales).

He utilized diligently Macy's, Inc.'s proprietary Customer Relationship Management ("CRM") software called "*B-Connected*" where he on-boarded roughly 1,000 of his own valued clients' relevant data over the course of his employment. Such onboarding takes about 15 minutes per client, and therefore he allocated about 250 painstaking work hours of time to this vital task.  Plaintiff estimates that each client is "valued" conservatively, on average, at $US5,000, and therefore his "book" of clients is valued roughly at $US5 Million.  It is conclusive that Plaintiff's Claim for Quantum Meruit/Unjust Enrichment is meritorious, as Defendant Wright admitted as such in an in-person discussion with him on 25 January 2017 where she stated that, for all intents and purposes, he was being illegally separated from Macy's, Inc. in order for other [less-deserving] salespeople to literally steal his $US5 Million client book which he accumulated over two years based on diligence, hard work, professionalism, honesty, solid communication skills, and expertise.

His performance each and every day and cumulatively through his illegal

employment separation on 6 February 2017 was exemplary; his total amassed revenues are an enviable $US1.65 Million, placing him in Bloomingdale's Inc.'s "*Top Producer Program*" (which recognizes formally the most productive salespeople in terms of top-line revenue contribution) for 2015 *and* 2016; such model performance and production merited without doubt employment advancement in terms of higher responsibility and remuneration; Plaintiff will show conclusively in this Amended Complaint that he not was not only denied promotion opportunities unfairly, but also was denied them illicitly, unconscionably, and unjustly.

**3.    REASONABLE ACCOMMODATION REQUEST "INTERACTIVE DIALOGUE" WITH MACY'S, INC.; MACY'S, INC.'S PURPOSEFUL FAILURE TO PROVIDE ACCOMMODATION**

On 10 November 2015, Plaintiff had an in-person meeting with Defendant Ronquillo to reasonably request:

1. Use of mobile technology for business communications and transactions due to Plaintiff's severe allergies and the general biologically-based filthiness and disease-ridden nature of landline black desk phones and workstations (Plaintiff would experience immediate, extreme headaches, heaviness of chest and severely impaired breathing, lightheadedness and sneezing fits whenever he used such dirty devices to the extent that he couldn't work until the symptoms cleared;

2. Additional 20 minute break when necessary to ameliorate severe foot/leg pain associated with Plaintiff's permanent physical disability exacerbated by the highly unreasonable requirement to stand at work for roughly six hours per day on Floor 7's hard marble flooring;

3. Employment mobility Reasonable Accommodation Request to transfer work assignment to managerial or sales role considered a "desk job" for which he would be qualified, given the pain and suffering associated with the "standing role" and his permanent physical disability;

4. Eliminate unnecessary, illegal job–related stressors such as harassment,

hostile work environment, and discrimination; Plaintiff maintains two formal medical certifications for health – related barriers with *work limitation requirement of low stress environment*, dated 9 January 2015 and 2 March 2017, authorized by City of New York Human Resources Administration Department of Social Services, Customized Assistance Services.

On 22 January 2016 Macy's, Inc. acknowledged formally and in writing (with Ronquillo signing-off on 2 February 2016) on its "Accommodation/Disability Leave Management Office Response to Reasonable Accommodation" notice that it had received Plaintiff's healthcare provider's signed Certification in full support for Plaintiff's "desk job" Reasonable Accommodation request/prohibition on "standing role" (by Dr. Brian Golden, MD, dated 15 December 2015), yet Macy's, Inc., Bloomingdale's, Inc., Vogel, and Ronquillo purposefully failed to Grant this Reasonable Accommodation in Violation of Plaintiff's Rights under Title VII of the Civil Rights Act of 1964 and Americans with Disabilities Act of 1990, and New York State and City Human Rights Laws, instead terminating his employment illegally on 6 February 2017 via Retaliatory Discharge for his engaging in the protected act of Filing his three EEOC Charges against Macy's, Inc. and Local 3 Union.

In response to Plaintiff's injuries sustained by using the filthy, biologically - contaminated black landline phones on Floor 7, and his Reasonable Accommodation request to not use them in the future, Vogel writes in the 22 January 2016 notice "....*To accommodate his [Plaintiff's] request and concern about the use of the [landline] phone, the store should.....make available to the employee disinfectant wipes or a disinfectant spray, such as Lysol....*"  In stark violation of its own formal directives, the defendants failed to ever provide Plaintiff with requisite disinfectant wipes/spray, purposefully depriving him of his rights under Title VII, ADA, NYSHRL, and NYCHRL.

The Named Defendants who purposefully failed to comply with such

Federal laws are: Macy's, Inc., Bloomingdale's, Inc., Elisa Garcia, Esq., Jeffrey Kantor, Elyse Vogel, Michelle Ronquillo, Susan Wright, Susan Schiller, and Ariana Starace.

**4.      EMPLOYMENT–BASED HARASSMENT, DISCRIMINATION, HOSTILE WORK ENVIRONMENT, FAILURE TO PROMOTE, FAILURE TO PROVIDE ACCOMMODATION**

Plaintiff is, and always will be, a CAUCASIAN JEWISH MALE over 45 years of age, a naturally-borne person of the United States of America from Queens County, New York.  Despite his objectively superior performance as a commission-based sales expert in Luxury Home Products from the period 2 March 2015 to his illegal separation on 6 February 2017, with several accompanying client accolades communicated to Bloomingdale's, Inc. Flagship Store General Manager Dorothy Kiely on many occasions, he not only did not get promoted to a role commensurate with his exemplary performance, professional experience, education, and skills, abilities, and interests, but also was denied illegally reasonable accommodations and a fair, professional, and civil work environment.

A key aspect of Plaintiff's success at Bloomingdale's, Inc. was the quick rapport and trust he developed with his sophisticated, wealthy customers in the client-facing store environment; outfitting homes with ultra-high quality, complex home goods takes very strong communications and organizational skills, a high degree of product knowledge, self-confidence, and polished presentation abilities; when a salesman engages a client in such an environment and begins the sales dialogue, it is understood by all Bloomingdales', Inc. sales staff that once a particular salesperson is engaged with a client, that salesperson becomes responsible for the entire sales journey with the client – from introduction, to production selection, to POS transaction, to sale follow-up and ongoing relationship management.

On several occasions as delineated in the Original Complaint, defendant

Shekerchi, a Vera Wang Home product sales "specialist", engaged in overtly harassing and intimidating behaviour to both Plaintiff and Plaintiff's clients (once engaged by him) on Floor 7.  She would position her body in an obstructive fashion by the POS and product displays, literally refusing to allow Plaintiff to make client presentations and conduct transactions on behalf of such clients; she would constantly scowl in menacing, deranged fear-inducing fashion – like a stark-raving mad lunatic poised to attack Plaintiff and his clients – which resulted in unnerving and making Plaintiff and his clients extremely uncomfortable to the extent Plaintiff dreaded coming in close personal contact with Shekerchi for literal concern of his and his clients' personal safety.  Plaintiff's formal oral and written complaints against Shekerchi to both local Human Resources (i.e. defendant Wright and Union Representative and Executive Board Member and defendant Moses) went unheeded, (for instance he requested that Shekerchi be warned to not come within 10 feet of Plaintiff's person on Floor 7 at any time, which she failed to do and Bloomingdale's, Inc. failed to enforce) and instead Plaintiff became subjected to illegal retaliatory and disciplinary action, as per Wright's communication to him in person on Floor 3 at 1000 Third Avenue, New York County, New York in local Human Resources offices on 10 August 2016.  Macy's, Inc., Bloomingdale's, Inc. and Local 3 Union's failure to mitigate Shekerchi's feral, animalistic, behaviour on the salesfloor contributed directly to the Bloomingdale's, Inc. toxic work environment that caused directly Plaintiff's mental anguish, emotional distress, and embarrassment.  Enclosed herewith as **EXHIBIT A** is a photo of serial killer Aileen Wuornos, where the bone-chilling visage is almost an exact duplicate of the kind of unhinged visage one would encounter on Shekerchi's face – enough to make the strongest of us cringe in terror.

As a *generalist* salesman, Plaintiff would make product recommendations in Luxury home across all vendors and product lines without any bias or favouratism toward any of them.  A major component of Plaintiff's successful sales activity focused on ultra-high quality [eider duck and goose] down products like pillows

and duvets. For instance, Plaintiff's clients purchased SFERRA Fine Linens, LLC (an ultra-luxury Italian manufacturer founded in 1891) *"Cornwall"* 900+ fill power Canadian goose down pillows and duvet "inserts" and client feedback after purchase and use was very positive. ("Fill power" is a measure of efficiency of "down" which ranges from roughly 200 – 900 maximum, where down is a plush cotton-ball like material that covers geese and ducks under their feathers and provides year-round aerodynamically-sound insulation, where the higher the fill power number the more comfort and insulation the down will provide for an equivalent weight of said down – in this world, light *is* luxury). Defendant Clemmons was the "down" sales *specialist,* and each and every time Plaintiff would approach the down product department with an engaged client when Clemmons was present in the area, she would immediately approach Plaintiff and his client and rudely interject herself in the dialogue, literally interrupting Plaintiff's conversation with his clients, babbling uncontrollably and incessantly to them, physically and socially severing his own contact with them, causing great confusion, humiliation, embarrassment, and poisoning of the sales dialogue to the extent that several of Plaintiff's clients discontinued their work with him when Clemmons so uncouthly offended, leaving the salesfloor without any product fulfillment whatsoever (on one occasion, Plaintiff's client was a senior professional in UBS's Wealth Management Division in Florida, where Clemmons' destructive behaviour not only negatively impacted Plaintiff's business internal to Macy's, Inc. with him, but also more generally caused Plaintiff severe reputational damage externally in the marketplace; similar to Shekerchi, Plaintiff filed valid Complaint against Clemmons to Macy's, Inc., Bloomingdale's, Inc., and Local 3 Union, with all such defendants purposefully failing to correct Clemmons socially and professionally unacceptable and graceless interactions with Plaintiff and his clients – ever.

On three separate, distinct occasions between roughly September – December 2016, defendant Sabatelli, a Ralph Lauren Home sales *specialist,*

purposefully exposed her bare breasts to Plaintiff on the salesfloor (Floor 7 by the Ralph Lauren bedding department at 1000 Third Avenue, New York County, New York, 10022), where such sexual harassment caused him severe emotional distress, mental anguish, and anxiety. When the third sexual harassment event occurred (in the presence of fellow Ralph Lauren *specialist* and witness Karen Williams) Plaintiff emailed his formal complaint against Sabatelli on 3 January 2017 to Richard Law, local Bloomingdale's, Inc. Human Resources employee relations executive, as per **EXHIBIT B**. Defendant Law failed to respond to the Complaint orally or in writing, failed to investigate the Complaint, and failed to take necessary, appropriate action against defendant Sabatelli on a timely basis, thereby contributing to the toxic work environment to the purposeful detriment of Plaintiff, his valued clients, Bloomingdale's, Inc., and Macy's, Inc.

As described, Plaintiff, as a *generalist* salesman, earned only 6% sales commission on his client revenues as his entire Bloomingdale's, Inc. remuneration; he had no "specialist" side compensation agreements and even though he applied for several such specialist roles, he was illegally denied them for completely discriminatory reasons. If another salesperson works with Plaintiff's client in his absence either on the phone or in person at Bloomingdale's, Inc. on his behalf, that salesperson must complete the transaction at the POS under Plaintiff's employee identification number, thereby correctly allocating the 6% commission to Plaintiff account. However, if such a salesperson transacts under her own employee identification number with Plaintiff's client, she then commits theft of Plaintiff's hard-earned commissions, as she will receive the 6% commission on Plaintiff's client instead of Plaintiff. In early March 2016, Plaintiff learned that Ralph Lauren Home *specialist* Sharen Freeling had, in fact, committed such theft of Plaintiff's sales commissions. Plaintiff complained against Freeling to defendant Starace (as a low-level local sales manager) about his stolen commissions, Freeling's horrific personal hygiene (she often wafted an intensely unbearable fecal-like stench), and her failure to abide by Macy's, Inc. information security protocols designed to

protect customer information (Freeling would leave unattended a large accordion-style folder which contained literally hundreds of historical client receipts which possessed material non-public information ("MNPI") on the POS counter at the Ralph Lauren Home product department on Floor 7, at times leaving such receipts exposed on the counter itself, where anyone could literally walk up to this counter and take this MNPI)  Attached as **EXHIBIT C** and **EXHIBIT D** are photos dated 25 June 2015 and 29 August 2015 which evidence clearly such unchecked wrongdoing by Freeling.  Starace promised action in full on Plaintiff's behalf by 10 March 2016 but purposefully failed to deliver on all counts.  On 11 March 2016 Plaintiff initiated a Solutions InSTORE dispute resolution request against Starace and Freeling via email (send to Mr. Kim Hansen of Solutions InSTORE at kim.hansen@macys.com, who also received Plaintiff's emailed dispute resolution request for the Shekerchi controversy on 24 March 2016 which went unanswered) to resolve the outstanding controversy surrounding Freeling and Starace's failure to act by her own-imposed deadline of 10 March 2016 against Freeling; Mr. Hansen and the Solutions InSTORE team failed to respond to this request, the result of which was Freeling's continued socially unprofessional, uncivil, and illegal activities which remained unchecked due to Starace and Solutions InSTORE purposeful failure to perform their essential job functions.

On one occasion in late December 2016 Plaintiff was speaking with defendant Manning, a John Matouk & Co., Inc. sales specialist ("Matouk" – a well-received American ultra-high end luxury bedding & bath product manufacturer founded in 1929) in the Matouk section on Floor 7, when several clients walked past in traditional Jewish attire (i.e. the men wearing yarmulkes [skull caps]) and Manning commented to Plaintiff immediately "….*you see them, those are Jews, they're all on welfare but they're all very cash rich and they hide their money so they can get welfare and they never buy anything from us* [Bloomingdale's] *because they are so cheap…*" or words very similar in effect.  Plaintiff realized that Manning didn't know that Plaintiff himself is Jewish, and he didn't respond to Manning's

derogatory commentary at all, and that day walked away from him for good.

Plaintiff has proven unequivocally that: 1) his performance in the sales generalist role in Bloomingdale's, Inc. was exemplary and that he was recognized on several occasions by local Management (Plaintiff received formal Letters of Commendation based on positive client feedback from Dorothy Kiely, Senior Vice President & General Manager of the Bloomingdale's, Inc. Flagship Store, dated 14 December 2016 and 20 January 2017, at least, in addition to being an inductee into the Bloomingdale's, Inc. "*Top Producer Program*" in both 2015 and 2016); and 2) his educational experiences, professional background and certifications, skills, and abilities as discussed in Plaintiff's *Bone Fides* are superlative – he has an extremely enviable "A-team" pedigree which translates into his being highly qualified for specialist roles, managerial roles, and, without doubt, senior leadership roles within Macy's, Inc. Administration itself.

Yet, the many, many open internal job postings Plaintiff applied for (where he was in fact fully-qualified) went unanswered – each and every time. Plaintiff discussed with defendant Starace his interest in being considered for promotional opportunities in person, and she always vehemently opposed his requests for her support because of Plaintiff's actual disabilities or his *perceived* disabilities (as part of the Discovery process Plaintiff will learn what, exactly, are the "perceived" disabilities that Starace was alluding to which prevented him from obtaining his requested Reasonable Accommodations and the lawful consideration for employment mobility in roles for which he was entirely qualified.

For instance, Plaintiff applied for the role of "[bridal] *Registry Manager*" (Floor 6, 1000 Third Avenue, New York County, New York, 10022) for which he was fully qualified (and a "desk job"), and sent an email to defendants Wright and Ronquillo on 12 June 2016 requesting follow-up on this internal employment Application given Bloomingdale's, Inc.'s failure to answer him previously; neither Wright nor Ronquillo ever answered Plaintiff's formal written request for an

update on his candidacy for Registry Manager. Eventually, an external individual ("Cheryl") of questionable qualification was hired for the role of Registry Manager, proving Plaintiff's contention that he was illegally denied fair and reasonable internal employment mobility consideration by Starace, her manager Schiller, Wright, and Ronquillo, at least.

Most if not all of the interpersonal interactions on the salesfloor between Plaintiff and local low-level management – always initiated by these "low-levelers" were contentious, disparaging, and abusive – designed solely to demean, degrade, embarrass, and subjugate Plaintiff. For instance, on one evening in November 2016 when Plaintiff was working in the Hudson Park luxury linens department (a well-received Bloomingdale's, Inc. proprietary brand) on Floor 7 in the early evening, Furniture Department Manager "Al" approached Plaintiff and literally ordered him to get on his hands and knees and clean the floor. Shocked, Plaintiff told "Al" that his role is as a salesman and not a member of the cleaning staff. Yet, he told him, if Al continued to demand that Plaintiff clean the floor, he would change out of his expensive high quality suit and tie he had on at the time, put on sweatpants and a tee shirt, and get on his hands and knees and clean the floor – after-hours once all clients left. Al didn't speak and remained silent, and then Plaintiff walked away from Al for good.

On 19 January 2017, in the late afternoon, defendant Pressner approached Plaintiff whilst he was working in the Ralph Lauren Home Department on Floor 7 and attempted to literally force him to stop working, in front of the general public, clients, and other salespeople shouting injuriously and loudly "...*take yourself off the salesfloor now...*!" for no apparent business reason or any remotely-legal grounds. Plaintiff calmly, quietly, and professionally attempted to counsel this immature, inexperienced, and unknowledgeable "management trainee" that Plaintiff was engaging in client-related activities and that since she could not provide a valid or reasonable substantiation for her demand for his work stoppage,

he needed to continue working.  Pressner then screeched "*OK then I will continue onward,*" or words similar in effect, and proceeded to traverse the salesfloor.  On 25 January 2017, in the in-person meeting with Wright, Wright admitted to Plaintiff that defendant Schiller had compelled Pressner to affront, shame, disturb, embarrass, demean, and defile good Plaintiff – Prosecutor, in effect confirming that Schiller had thrown this young women under the bus, permanently destroying her career.

On 27 January 2017 at 13:36, Plaintiff Filed a formal Macy's, Inc. Global Compliance voice report (**EXHIBIT E**) against Wright, Schiller, Starace, and Pressner for harassment, discrimination, failure to provide disability accommodation, and the illicit promotion of hostile work environment.  On 30 January 2017 at 11:01 Macy's, Inc. replied "....*Thank you for taking the time and making the effort to report your concerns. The Company appreciates the steps you have taken to ensure that Company policies are upheld. An investigation was completed based on the information received. Appropriate action was taken in accordance with company policy. If you have further questions or concerns, please contact Richard Law at richard.law@bloomingdales.com.....*"  Defendant Law failed to contact Plaintiff to discuss the purported "appropriate action" that was taken by Macy's, Inc.  Instead, Plaintiff was notified on 6 February 2017 that he was illegally separated from Macy's, Inc.

**5.     UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY ("EEOC") COMMISSION CHARGES**

On 13 August 2016, Plaintiff initiated formal EEOC action against Macy's, Inc. and Local 3 RWDSU/UFCW United Storeworkers Union via a duly – executed EEOC intake questionnaire.  On 29 November 2016, Plaintiff duly – executed two EEOC "Form 5" Charges, one against Macy's, Inc. (Charge No. 520-2016-03830) and the other against Local 3 RWDSU/UFCW United Storeworkers Union (Charge No. 520-2017-00660), which were served on the entity respondents 7 December 2016

and 9 December 2016, respectively.    Plaintiff Filed these Charges for Discrimination in stark violation of the Title VII of the Civil Rights Act of 1964, as amended, Disability in violation of the Americans with Disabilities Act of 1990 as amended, and victim of Retaliation for participating in a Protected Activity.

On 24 February 2017, Mr. Kevin J. Berry, District Director, EEOC, issued Notice of Suit Rights to Plaintiff for both Charges that he received on 10 March 2017.

After Plaintiff's Retaliatory Discharge from Macy's, Inc. on 6 February 2017, he Filed a "Continuing Action" EEOC Form 5 Charge (No. 520-2017-01750) on 22 March 2017 Indicting Macy's, Inc. with: Lack of Good Faith & Fair Dealing, Fraud, Retaliatory Discharge, Failure to Provide Accommodation, Violation of Equal Pay Act, Defamation *per se*, Failure to Promote, Failure to Relieve Hostile Work Environment, Harassment (sexual and otherwise), Breach of Contract, Quantum Meruit/Unjust Enrichment, Intentional Infliction of Emotional Distress, Violation of 45 CFR §164.530(c) in concert with CIGNA Corporation, Purposeful Misuse of Plaintiff's Social Security Number [by Named Individual Defendant Goodell, at least], ERISA Violations [by Named Individual Defendant Von Wahlde, at least]. This Continuing Action Charge is subject to: Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act, The Americans with Disabilities Act, and The Equal Pay Act.  Mr. Berry, District Director, issued Notice of Suit Rights on 5 April 2017 for this Charge No. 520-2017-01750 which were received by Plaintiff on 22 April 2017 (enclosed herewith as **EXHIBIT F**).

On 10 April 2017 Plaintiff received a *partial* redacted transmission via email of his Macy's, Inc. Case File from EEOC Investigator Sabrina Shaver via his EEOC Section 83 information request, yet was shocked that he did not receive his *entire* unredacted EEOC Case File, even though he certified that such information was vital to the initiation and efficient processing of this Federal lawsuit; the Case File sent to him contained absolutely no evidence that EEOC investigators contacted and communicated with the respondents in writing, via email, via facsimile, on the

phone, or in person, nor any evidence that any valuable research and analysis was conducted by EEOC to frame the facts underlying the Charges (i.e. no work was done to understand: the extent of Plaintiff's unequal pay vs. other salespeople who Macy's, Inc. did not discriminate against, the extent that less deserving, less qualified employees were promoted illegally ahead of Plaintiff, such as those without United States citizenship, what information was even contained in Plaintiff's formal Employee File!) A reasonable person can only conclude that, in fact, EEOC purposefully failed to research, analyze, and investigate the Charge allegations at all, unethically shirking its formal legal responsibilities to Plaintiff – and derivatively the People of the United States of America – as it appears there was absolutely no interaction between the EEOC and the respondents, and that no fact – gathering, logical due diligence and analysis, and rational decision-making was ever made at New York District Office at EEOC at all regarding Plaintiff's meritorious Charges against Macy's, Inc. and Local 3 Union.

On 10 April 2017, EEOC Supervisory Investigator Charles Diamond acknowledged via email that the Case File contained more information than had been transmitted to Plaintiff, yet he refused to release such information to him, even knowing full well that such details would be vital to the efficient prosecution of this matter now before Court; this purposeful failure on the part of EEOC New York District Office to provide full discovery details further aggrieves and deprives Plaintiff of his rightful pursuit of his meritorious claims in Court. Good Plaintiff – Prosecutor will be requesting Court to issue a Production Subpoena to compel EEOC to provide full discovery so that his Claims may be completely and properly vetted by Court as per his rights under the Constitution of the United States of America and any and all applicable Federal law.

6.     **29 U.S. CODE §1132-CIVIL ENFORCEMENT FOR FAILURE TO MAKE EMERGENCY HARDSHIP WITHDRAWALS, 29 U.S. CODE §1104-FIDUCIARY DUTIES (MACY'S, INC. 401(K) RETIREMENT INVESTMENT PLAN): BANK OF AMERICA CORPORATION, MACY'S, INC.**

Plaintiff made several good faith formal valid requests of Macy's, Inc.'s 401k Plan Administrator Bank of America Corporation's Bank of America Merrill Lynch Wealth & Investment Management Unit ("BAML") completely and formally in writing beginning on 7 June 2016 for valid emergency hardship withdrawals due to eviction threats from his primary residence in New York County, New York.  BAML illegally, unjustly, unethically, and immorally denied each and every plea for such requisite emergency liquidity as within his rights, and the result was his forced eviction from such primary residence on 20 June 2016 due solely to BAML's heinous and illicit purposeful failures to make the lawful emergency liquidity distribution on a timely basis.  On 2 August 2016 a final written request for private conflict resolution with BAML was made to authorized BAML senior representative Ms. Sandra L. David, GWIM Registered Group Operations Manager, Vice President, Employee Retirement Savings Center, Merrill Lynch Wealth Management, 4803 Deer Lake Drive West, Jacksonville, Florida, 32246 and on 12 August 2016 this Offer expired based upon BAML's purposeful refusal to act in good faith whatsoever.

Plaintiff then petitioned directly the Macy's, Inc. Pension & Profit Sharing Committee ("Committee") formally for such an emergency hardship withdrawal ("the BAML override") and compensatory damages on 4 September 2016 as per Article 8.2 "*Withdrawals During Employment*" requests (as defined by the Amended and Restated Macy's Inc. 401(k) Retirement Investment Plan ("Plan") effective 1 January 2014 ("the Plan"), duly – executed by Executive Vice President, Human Resources 19 December 2013).   Named defendant Von Wahlde was assigned the matter on behalf of the Committee.  Defendant Von Wahlde then illegally denied (based on ERISA §502(a), at least, and Plan §8.3 predicates where "...*hardship....[*is defined as*] immediate and heavy financial need of the Participant*..." generally and §8.3.1(g), specifically, where: "*.....to the extent not included in any of the foregoing paragraphs, the need to pay expenses to alleviate the Participant's severe financial hardship resulting from extraordinary and unforeseeable*

*circumstances beyond the control of the Participant....",* at least) this good Plaintiff's request for the BAML override in writing on 28 September 2016, 28 October 2016, and finally on 5 December 2016 after Plaintiff, in recursive fashion, supplied voluminous substantiating data which proved conclusively his *immediate and heavy financial need, the need to pay expenses to alleviate the Participant's severe financial hardship resulting from extraordinary and unforeseeable circumstances beyond the control of the Participant* [Plaintiff]. On 16 December 2016, Plaintiff and defendant Von Wahlde engaged in an lengthy (approximately one hour) conference call to seek mutually beneficial resolution to BAML override request and request for compensatory damages, and other injunctive relief, however Von Wahlde failed purposefully once again in delivering as per ERISA and Plan predicates based on the irrefutable evidence submitted to him by Plaintiff.

Plaintiff then received an email from Von Wahlde on 27 December 2017 purportedly from the Committee with a "final" [illegal] denial of his request for the BAML override, and Plaintiff communicated that he would then be reserving his rights via the Filing of a Federal Complaint (which, in fact, he did do on 13 March 2017 via the Original Complaint); Garcia and Von Wahlde then sought to engage in Retaliatory Discharge activities against good Plaintiff – Prosecutor, which in fact did occur on 6 February 2017.

On 10 April 2017 Plaintiff received an email from Clare Coughlin, Recruiter, BAML Wealth Advisory, in response to an employment application he submitted to become a Wealth Management Financial Advisor at BAML. He had to take and a pass a "Virtual Job Trial (VJT)" evaluation and "Financial Information Aptitude Test (FIAT)" before being interviewed for the Role. After passing both tests he had a "phone screen" interview with Coughlin on 13 April 2017 and after passing the phone screen he was required to complete a financial services industry pre-registration authorization checklist form and a detailed, comprehensive "business plan" template for his strategies on building his own Wealth Management Advisory business at BAML. He was then told that his proposed place of work

would be a BAML office located at 601 Lexington Avenue, 47th Floor, New York County, New York, 10022, and that he would interview with the professionals at that location.  He had in-person interviews at that location on 25 April 2017, 3 May 2017 (with Aanal Shah, Director and Market Executive), and 10 May 2017.  On 2 June 2017 Plaintiff received a call from Shah to inform him that he was being Offered the Role of BAML Financial Advisor and Plaintiff accepted orally the position and then accepted the written Offer on 8 June 2017, with a start date of 26 June 2017.  BAML then demanded and obtained significant MNPI from Plaintiff under the guise of employment "onboarding", regarding: significant private and sensitive details about prior employers The Goldman Sachs Group, Inc. and Cantor Fitzgerald, L.P.; about Ashem LLC, a duly authorized Delaware Company where Plaintiff is Managing Member and owns 100% of the Class A Membership Units; his Social Security Number; his fingerprints, his Form I-9; a detailed Political Contributions Form; photocopy of Plaintiff's United States photo identification (United States of America Passport Card).

On 23 June 2017 it became clear that BAML defrauded Plaintiff and had no intention of ever letting him begin work there, and Plaintiff sent an email to Cindy Woehlert, Officer, Recruiting Coordinator, Merrill Lynch Wealth Management, Bank of America Global Talent Acquisition – who was in possession of a significant portion of Plaintiff's MNPI – and communicated that she should immediately destroy any of Plaintiff's hard copy and electronic MNPI because of his judgment that BAML was engaging in employment fraud.

On 26 June 2017 Coughlin certified that BAML still planned to hire him, and that BAML needed more information from him, including additional details of his personal and professional experiences and dealings, and the specifics surrounding his outstanding $US49 Million Default Claim against New York University (via that certain lawsuit with New York County Index No. 150622/2013).  In good faith response, Plaintiff spent about 10 hours preparing the demanded voluminous

information that he transmitted to BAML on 29 June 2017 given Coughlin's oral and written certifications that Plaintiff still had the formal Offer of employment.

On 6 July 2017 Coughlin called Plaintiff to tell him that the Offer of employment was formally rescinded once BAML had all Plaintiff's MNPI, as had been Plaintiff's suspicion since 26 June 2017.  Shah has since not communicated to Plaintiff whatsoever about this BAML employment fraud, the related information extortion and theft of MNPI, and Plaintiff's embarrassment, reputational damage, emotional distress, mental anguish, and severe anxiety caused first by BAML's failure to make the hardship withdrawal payment on a timely basis and then second by the employment fraud and information extortion perpetrated with heinous, malicious intent by BAML over the four month period from April – July 2017.

Given the long standing, buffet table of wrongs committed by BAML against good Plaintiff during the period June 2016 – Present, he has Named Terrance P. Laughlin, Vice Chairman, Head of Global Wealth and   Investment   Management, Bank of America Corporation as Defendant: in this Case, the liability goes all the way to the top at BAML.

## 7.    PURPOSEFUL VIOLATIONS OF 45 CFR §164.530(C), HIPAA §104-191 AND §1177 BY MACY'S, INC., BLOOMINGDALE'S, INC. AND CIGNA CORPORATION

In the morning of 24 January 2017 good Plaintiff - Prosecutor visited a health care provider for a diagnostic exam which resulted in the dissemination of a very grave, tragic diagnosis [details omitted for Plaintiff's privacy] which caused him severe emotional distress, anxiety, and inner turmoil.  Regardless, he went into work that afternoon at Bloomingdale's Flagship Store on Floor 7, 1000 Third Avenue, New York County, New York, 10022.  Early in his shift Defendant Spring's administrative assistant, with whom Plaintiff had had casual conversations previously on Floor 7, approached him by the Hudson Park (Bloomingdale's, Inc. proprietary line) luxury linens department; whilst he can identify this

administrative assistant personally by visage, he had never known her by name. (*Defendant Bloomingdale's, Inc.'s executive offices [where defendant Spring is situated] are as also on Floor 7, and all senior executives must traverse the salesfloor in Luxury Home in order to get to their respective places of work. Plaintiff cited all such senior executives often in the course of his work assignments on Floor 7 throughout his workday*).

During this particular conversation, Spring's administrative assistant told him that defendant CIGNA Corporation had that very day communicated illegally to Spring, verbatim, the diagnosis that the medical provider had provided to Plaintiff earlier that day, and intimated that Plaintiff would face adverse work action because of this unlawful transfer of information to defendant Bloomingdale's, Inc. leadership.

Plaintiff immediately Filed a formal Complaint against CIGNA Corporation with United States Department of Health & Human Services Office for Civil Rights ("HSS-OCR") and received notification (OCR Transaction No. CU-17-261183) from HSS-OCR dated 22 February 2017 that, in fact, CIGNA Corporation violated 45 CFR §164.530(c), at least; Plaintiff then experienced Retaliatory Discharge from Macy's, Inc. on 6 February 2017, which was communicated to him by CIGNA Corporation when, at another medical provider, he was told that his Macy's, Inc. CIGNA Medical Coverage had been terminated.

Whilst good Plaintiff – Prosecutor is aware that it is "doubtful" that no *private* cause of action can be asserted under HIPAA [§104-191 and §1177, at least], to the greatest extent possible he wishes to assert, on behalf of the People of these great United States of America, whatever *public* causes of action are available to be asserted; he awaits instruction from Court as to the practicalities surrounding the assertion of such *public* claims; any such monies obtained from the wrongdoers under the assertion of such public claims would be collected on behalf of United States Department of the Treasury. Plaintiff is not aware of any prohibition on a

private person or entity on asserting a such a public claim for the benefit of the United States of America.

### 8.   ILLEGAL EMPLOYMENT SEPARATION/RETALIATORY DISCHARGE FROM MACY'S, INC. AND BLOOMINGDALE'S, INC.

On 25 January 2017 Plaintiff was literally forced off the salesfloor on Floor 7 at 1000 Third Avenue, New York County, New York, 10022 in the middle of a "big-ticket" (roughly $US5,000) client transaction in Matouk product, requiring him to leave the client's products and her MNPI on the POS station – in stark violation of Company policies and procedures and relevant Federal and State laws – by Wright. During a "meeting" with Wright, witnessed by Mr. Jack Rojas of Local Three Union, on Floor 3, she ranted and raved endlessly and unstably for about fifteen minutes, in a highly unintelligible, troubling, and disturbing fashion, where the only logical conclusion Plaintiff could glean from her was that the sales force was being downsized, his 1,000 or so hard-earned client accounts might be taken from him and redistributed to other salespeople, that Schiller had thrown Pressner under the bus, and that Wright was telling Plaintiff to leave work and "go home" for the foreseeable future (again, without just cause or within any guidelines formally established by Macy's, Inc.).  On 27 January 2017 he met in person once again with Wright where she once again ranted and raved endlessly and unstably for about fifteen minutes, in a highly unintelligible, troubling, and disturbing fashion.  On neither occasion did Wright follow any proper protocol concerning any formal legal employment separation proceedings.  Whilst out of the office during this week and the next he sought emergency medical treatment for a host of physical illnesses and injuries, which included three (3) visits to local Emergency Rooms for urgent medical treatment.

It is established formal written Macy's, Inc. and Bloomingdale's, Inc. policy called "Responsibility – Based Performance" as per the Bloomingdale's, Inc. "Staff Associate Handbook" (Page 41) that "…..*each associate…will receive a first formal*

written reminder that their performance is not to Bloomingdale's standard....will [then] result in a second formal written reminder.... and if performance is not rated at least average 30 days after the second formal written reminder, the associate will be given a decision making leave.....which consists of one work shift off with pay, during which time the associate will either decide to commit to company standards or resign from Bloomingdale's....if the associate commits to standards he/she will be given another 30 days to improve....if this standard is not met at the end of 30 days, [ONLY THEN] employment will be terminated......"

 In addition, Page 59 of the "Local 3 Union Contract Guidelines" states clearly that ".....written incident report forms shall contain a statement advising the subject of the Report that he or she is entitled to read the Report....each employee who is disciplined by reason of a written incident report shall be permitted to read the report and to attach thereto a response signed by the employee....in each instance when the Employer sends written notice to the Union that an employee has been placed on warning or otherwise disciplined, the employee shall be handed a copy of the notice when the employee reports to the Personnel Office when requested to do so...." Plaintiff hereby certifies that he never received any of the required written documentation under the Staff Associate Handbook and/or Local 3 Union Contract Guidelines; as such Court can only conclude that based upon Federal, State, and local laws, and Macy's, Inc.'s own formal written policies and procedures, he was never legally or justly separated: Wright purposefully failed herself to behave within clearly - established Bloomingdale's, Inc. policy and procedures and Local 3 Union requirements regarding a written documentary record of any and all performance counseling and disciplinary sessions, and she did not clearly and adequately in writing communicate with Plaintiff at all that he was being formally and illicitly separated from employment with Bloomingdale's, Inc.

 As an aside, Plaintiff had requested short – term disability / FLMA leave during the week of 23 January 2017 given a variety of serious, severe medical

conditions which caused him significant physical and non-physical pain, suffering, and discomfort, including the visit on 24 January 2017 that CIGNA Corporation reported illegally to Spring.  Plaintiff also Filed a Workers Compensation Claim on 25 January 2017 with Macy's, Inc. as self-insured.  Goodell was assigned to the Claim.  On 9 February 2017 Plaintiff wrote to Goodell in an email "Please note that my Case [Worker's Compensation Claim] is made more complicated as either my health care providers or CIGNA, our Carrier, illegally released my private information to Bloomingdale's local management in violation of HIPAA, and as a result, I was illegally separated from Macy's, Inc. whilst getting medical diagnoses/treatments.   Of course, this unlawful, unfair, and unconscionable discharge is causing me additional and wholly unnecessary severe emotional distress, mental anguish, and anxiety".

On 29 January 2017, Plaintiff sent defendant Garcia via email a private, good faith, mutually beneficial, reasonable Offer of Settlement of any and all past and present litigation Claims against the Macy's, Inc./Bloomingdale's, Inc. defendants and on that same day, Garcia responded "…..we will not be discussing settlement Mr. Mitchell.  Please direct any correspondence to Mr. Fernandez (copied). Thanks, Elisa…"; as Macy's, Inc.'s Chief Legal Officer, its most senior lawyer, Garcia is charged with mitigating any and all Macy's, Inc. legal risks and must also, of course, not engage in frivolous behaviour as defined in Rule 3.1 of the New York State Unified Court System Part 1200 Rules of Professional Conduct where "a lawyer's conduct is frivolous for purposes of this Rule if the:

1.  lawyer knowingly advances a defense that is unwarranted under existing law;

2.  conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2 ("in representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense") or serves merely to harass or maliciously injure another; or

3. lawyer knowingly asserts material factual statements that are false."

Garcia's uncivil position – her stark refusal to engage in conclusive mutually beneficial dealmaking with good Plaintiff – Prosecutor which would have avoided completely this Federal Prosecution – proves she is guilty at least of purposeful violations of Part 1200 Rules as are her colleagues and fellow defendants Von Wahlde, Fernandez, and De Palma. Plaintiff asks, "*are attorneys at Law admitted to the Bar in these great United States of America trained in the least at legal risk minimization, negotiations, and dealmaking*?" As is clear from this Amended Complaint, these lawyer-defendants are entirely unskilled in these areas, at least, and at most, incompetent; their inactions not only damage Plaintiff but also their own employer Macy's, Inc.

On 13 February 2017 he had a conference call with defendant Goodell to discuss the Workers Compensation Claim. During this call, Goodell stated that she was working out of her home, which caused Plaintiff great concern as she had Plaintiff's private, material, non-public, and personally identifiable information in her own private residence. She also demanded substantial information from Plaintiff that was completely irrelevant to the handling of the Workers Compensation Claim, including his Social Security number and details of prior employment history, over the phone from her personal residence. After detailing his specific, severe emergency conditions, his substantiated on the job injuries and illnesses, Goodell stated that she was going to disapprove the Claim as Plaintiff sounded "like a disgruntled employee" and then, in the same sentence, said "don't threaten me" and "thank you" and then hung up the phone on Plaintiff without allowing him to respond to her outrageously fallacious statements. Plaintiff immediately documented the details of Goodell's wrongdoing (including the commission of defamation *per se*) to defendant Fernandez, via email.

On 14 February 2017, Plaintiff received written notice from Local 3 Union Secretary – Treasurer Shaun Kavanagh that Local 3 Union, after reviewing his Bloomingdale's, Inc. employment file, supported his Position that defendants

Macy's, Inc., Bloomingdale's, Inc. and Wright, at least, acted unlawfully regarding his retaliatory discharge/illegal employment separation, and had scheduled an in-person "grievance meeting" on Floor 10, 1000 Third Avenue, New York County, New York, 10022.  On 28 February 2017 Plaintiff called Local 3 to tell Mr. Kavanagh that he would not be physically present at this "grievance meeting" the next day as he was concerned for his safety and security should he return to those premises, after being subject to the buffet of civil and criminal wrongs at 1000 Third Avenue, New York County, New York, 10022.  Regardless, once the EEOC Charge was Filed against Local 3 Union, the Union lost any and all standing regarding formal representation of Plaintiff and therefore could not act on his behalf after 29 November 2016.

Plaintiff has not received any communication whatsoever from Local 3 since the call on 28 February 2017, and doesn't even know if the 1 March 2017 grievance meeting was held without him or not.

9.      **RETALIATORY DISCHARGE, BREACH OF CONTRACT, AND FRAUD (18 U.S. CODE §1341–FRAUDS & SWINDLES): MACY'S, INC., BLOOMINGDALE'S, INC., AMERICAN ARBITRATION ASSOCIATION**

As attested to, good Plaintiff – Prosecutor received formal notification of his illegal employment separation on 6 February 2017 when he sought ongoing emergency medical treatment at NYU Langone Centre for Men's Health ("NYU Men's") at 555 Fifth Avenue – Floor 2, New York County, New York, 100022.  Upon his arrival at NYU Men's he checked in at the front desk and was told that his Macy's, Inc. CIGNA Corporation health insurance had been cancelled.  Astonished, he called CIGNA and was told over the phone that, in fact, his employment had been severed and his CIGNA insurance cancelled [illicitly].  He asked for, and received, written proof of insurance discontinuance from CIGNA that day.

Plaintiff first contacted defendant Garcia on 22 November 2016 via voicemail and email given defendant Von Wahlde's purposeful failure to complete the BAML override which continued to aggrieve him to a very significant and

tangible extent (on top of the 20 June 2017 eviction event) and had asked for her assistance in completing the BAML override given the severity of the matter. Plaintiff pleaded with Garcia via email again on 8 January, 13 January, and 27 January 2017 for such emergency intervention.  Without working to resolve the matter herself, much to the tangible detriment of Plaintiff, Macy's, Inc., and Bloomingdale's, Inc., she assigned defendant Fernandez to handle the matter; defendant Fernandez also failed to facilitate the BAML override, much to the tangible detriment of Plaintiff, Macy's, Inc., and Bloomingdale's, Inc; any reasonable person with common sense can only conclude that the Plaintiff's assertion of his rights under ERISA and the Plan was one of the reasons why he experienced retaliatory discharge.

Defendant Macy's, Inc. maintains a formal dispute resolution mechanism for employees known as "Solutions InSTORE – Early Dispute Resolution" which is governed by the Solutions InSTORE Early Resolution Plain Document Early Dispute Resolution Rules and Procedures (dated 1 June 2014) ("Solutions Plan"). The Solutions Plans contains four formal steps to employment-related dispute resolution:

1. STEP ONE: "Open door" informal discussions with supervisor and/or local management; if employee receives unsatisfactory or no response he moves to STEP TWO;

2. STEP TWO: Employee submits written complaint to his division's local senior Human Resources manager (in this case, defendant Ronquillo) for investigation, action, and response; if employee receives unsatisfactory or no response he moves to STEP THREE;

3. STEP THREE: "Request for Reconsideration" which is formal contact with the "Office of Solutions InStore" formally either by phone or email where the employee will have a review by a peer panel or a review by the Office of Solutions InSTORE (housed in Macy's, Inc.'s Employee Relations

Department, Human Resources, in Cincinnati, Ohio); if employee receives unsatisfactory or no response he moves to STEP FOUR;

4. STEP FOUR: Formal Arbitration proceedings via American Arbitration Association for "...*All Employees hired by Macy's with a first day of employment on or after June 1, 2014, where "Macy's" means any division or subsidiary or operating unit or entity related to Macy's, Inc.....where all Employees are automatically covered by all 4 STEPS of the Program...*" (Solutions Plan, page 4).

On 27 January 2017 Plaintiff initiated orally and via email a STEP 3 request with Office of Solutions InStore for his various meritorious employment-related Claims, and on 7 February 2017 he received the following email response: "*.....HI Seth, Thank you for reaching out to Solutions InSTORE. We received your email and respectfully direct you to your Union Representative at your location for any further assistance. Due to the "Collective Bargaining Agreement", Solutions InSTORE is unable to offer our program. Thank you again, Cathie, Solutions InSTORE....*"

Plaintiff believed this message from "Cathie" to be erroneous and illegal, especially in light of the clear and irrefutable Solutions Plan page 4 predicates, where such a message was designed solely to delay, prevent, obfuscate truth, and frustrate Plaintiff's pursuit of the resolution to his outstanding employment-related Claims; on 29 January 2017 Plaintiff sent via email a Letter to defendant Fernandez formally requesting both: 1) the current verbatim Local 3 Union Contract and this purported "Collective Bargaining Agreement" – neither of which had ever been provided to him despite his many oral and written requests to Macy's, Inc. and Local 3 Union employees; any reasonable and rational person can only conclude that the Local 3 Union Contract and Collective Bargaining Agreement *simply do not exist at all*, and the defendants in this matter are simply guilty of fraud regarding such fabricated contracts which fallaciously entrap employees and hinder their rights to pursue valid employment-related Claims.

On 21 February 2017 via email at EmploymentFiling@adr.org Plaintiff initiated STEP 4 proceedings as per his rights and the clear, specific contractual provisions of the Solutions Plan (Article 5 – Time Limit to Initiate Arbitration "....*an employee is not required to participate in STEPS 1 through 3 before initiating Arbitration.....*" (Page 7); he Filed a $US30 Million Demand for Arbitration with defendant Lesser's team at defendant American Arbitration Association ("AAA") under Case No. 01-17-0001-0985 for a variety of meritorious causes of action, and provided the contractual terms which allow for the Arbitration of Claims, as outlined in this Amended Complaint. Macy's, Inc. filed absolutely no valid objections to the jurisdiction of this forum as of 5 March 2017, at which time, as per AAA Rules, the AAA Panel must have ruled on matters related to jurisdiction.

On 26 February 2017, Plaintiff requested formally a Hardship-based Fee waiver of AAA costs, and AAA demanded of him: Notarized Affidavit of Hardship, Federal Income Tax Returns (including schedules) from the past two years, and Itemized bank statements from the past three months; he had no choice but to comply in good faith with these very onerous information demands given the financial distress he experienced as a direct result of the defendants' purposeful wrongdoing.

On 3 March 2017 defendant Fernandez writes to AAA and Plaintiff via email: "*.....Bloomingdale's/Macy's object to the request of an Emergency Arbitrator being appointed as Mr. Mitchell is not subject to AAA through his employment at Bloomingdale's and therefore the AAA does not have authority to hear this matter. As informed numerous times, Mr. Mitchell's recourse is through Local 3 and the processes and procedures agreed to by Local 3 and Bloomingdale's in resolving work related issues. Respectfully, Santiago A. Fernandez, Senior Counsel, Macy's, Inc.....*"

Outrageously, in violation of clear AAA and Solutions Plan Rules – and before the AAA Panel was even assigned – AAA Employment Filing Team (located at 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043) sent via email a Letter

dated 7 March 2017 stating  "........*it appears Mr. Mitchell was a member of the union and as such the AAA lacks the authority to arbitrate this dispute under the Employment Arbitration Rules.  Accordingly, we have administratively closed our file. There will be no reconsideration of this decision at this time.....*"  (Plaintiff would have requested of the Emergency Arbitrator Discovery from Macy's, Inc. in the form of the Local 3 Union Contract and Collective Bargaining Agreement, at least; he Filed for Emergency Measures of Protection as per AAA Rules on 2 March 2017.)

As stated previously, when the *EEOC Charge was Filed against Local 3 Union* ***on 9 December 2016, Local 3 Union lost any and all standing in relation to Plaintiff's formal representation with Macy's, Inc***; *on this day, Plaintiff became "self-represented" in any and all employment matters concerning Macy's, Inc.*  In addition, as per Solutions Plan, Article 2 (page 5) "*...if there are any differences between the Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures, the Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply......*"

Between 19 February and 24 February 2017, Plaintiff made several written email requests of defendant Moses (a Local 3 Union "Executive Board Member" and towels department Sales Associate) for both the Local 3 Union Contract and Collective Bargaining Agreement; Moses failed to provide either such purported "contract".  During the week of 20 February 2017, Plaintiff had a phone conversation with Mr. Shaun Kavanagh, Secretary-Treasurer (Mr. Kavanagh not able to be contacted via email) during which he requested orally both the Local 3 Union Contract and the Collective Bargaining Agreement and Mr. Kavanagh refused Plaintiff's request for both formal documents.  These multiple bad faith Local 3 denials, combined with those of Macy's, Inc.'s Garcia, Fernandez, and "Cathie" of Solutions InSTORE, are emblematic of the breach of contract and fraud that has run rampant at Macy's, Inc.

Given the size of the AAA Demand ($US30 Million) on Macy's, Inc., Plaintiff made several good faith overtures aimed at conflict resolution directly with defendant Hoguet (Macy's, Inc.'s Chief Financial Officer) via email on 5, 7, 13, and 15 March 2017; all such formal requests went unanswered.  Not only did Hoguet's failure to respond further aggrieve good Plaintiff – Prosecutor, she acted contrary to the best interests of her own employer – Macy's, Inc.; by not engaging in good faith privately and civilly with him, she has greatly increased substantially the financial and legal risks to Macy's, Inc. unnecessarily and with incompetence.

Given that, wrongly, defendants AAA, Lesser, and Santo sided with defendant Fernandez's fallacious and illegal argument disputing AAA's jurisdiction of Plaintiff's Claims – in direct contravention of AAA Rules and the superseding rules of the Solutions Plan, the only conclusion a reasonable and rational person can reach is that the defendants have fully and irrefutably waived their rights to such Arbitration via AAA and, as follows, the matter is completely within the jurisdiction of the Southern District of New York, where this good Plaintiff – Prosecutor Filed his Original Complaint in good faith on 13 March 2017 at 15:57 EST.

On 18 April 2017, Plaintiff received an email stating "…..*Good morning Mr. Mitchell, I am in-house counsel for Macy's and Bloomingdale's and will be handling this matter from here on out with my colleague, Matt Hendricks.  I would ask that you please cease all communications with [*defendant*] Mr. Fernandez and the Office of Solutions InSTORE, and instead please direct any future communications to my attention.  Thank you.  Aahren.  Aahren Rodriguez DePalma, Counsel, Law Department, Macy's, Inc…..*"  On 14 May 2017 Plaintiff sent a formal Offer of Settlement to defendant DePalma (who eventually stated via email on 19 May 2017 that she "….*is the only individual with authority to discuss any aspect of this claim with* [Plaintiff]….") with a deadline for response of 16 May 2017; DePalma failed to present the Offer of Settlement to the defendants and actually failed to respond at all to the Plaintiff.  She, like Hoguet, Garcia, Fernandez, Von Wahlde, etc. acted

contrary to the best interests of her own employer – Macy's, Inc.; by not engaging in good faith privately and civilly with him, she has greatly increased substantially the financial and legal risks to Macy's, Inc. unnecessarily and with incompetence as an in-house lawyer to Macy's, Inc.

## III.    INJURIES SUSTAINED

As proven factually in the Original and now this good faith Amended Complaint, Plaintiff has been indelibly, irreparably, and purposefully harmed and damaged by the named and doe defendants: physically, non-physically, financially, and reputationally – both personally and professionally, where such severe financial and emotional distress, intense mental anguish, extreme anxiety, at least, continue unabated to this day.   Since 6 February 2017, the day of his illegal employment separation from Macy's, Inc., he has been unemployed with no income; whilst he has applied for, and continues to apply for, many roles, primarily in financial services, he has not received any offers of gainful employment, except for 8 June 2017 BAML Offer which as been shown to have been fraudulent.

## IV.    CREDIT QUALITY OF DEFENDANTS & RELIEF REQUESTED

In layman's terms, credit quality is defined as "*a debtor's ability and willingness to repay debts*".   In the adjudication of any litigation claims, Court must take into consideration the credit quality of the defendants when money damages are demanded to ensure that the Plaintiff's efforts are not frivolous and the Court's time not wasted.   In this Case, Plaintiff concludes that Macy's, Inc. is this Matter's foundational defendant given it is the irrefutable epicenter of the virulent strain of illegality that has caused Plaintiff so much purposeful damage since 2 March 2015 to the Present; as of 29 April 2017 Macy's, Inc. maintains *$US1.2 Billion in cash and equivalents* on its balance sheet (source: Macy's, Inc. Form 10Q, Quarter ending 29 April 2017).   As such, Court gains great comfort that whilst clearly the defendants *en masse* are unwilling to pay good Plaintiff – Prosecutor the reasonable sums

owed to him, Macy's, Inc. – as the foundational defendant – has the clear, full ability to pay Plaintiff's compensatory and punitive damages in full, both for his private claims and the claims he asserts on behalf of the People of these great United States of America.

Of the Macy's, Inc. defendants (*Macy's, Inc., Bloomingdale's, Inc., Local 3 RWDSU/UFCW, Karen Hoguet, Jeffrey Kantor, Tony Spring, Elisa Garcia, Esq., Stephen Von Wahlde, Esq., Michelle Ronquillo, Susan Wright, Richard Law, Santiago Fernandez, Esq., Susan Schiller, Elyse Vogel, Ariana Starace, Brittany Pressner, Robin Goodell, Susan Shekerchi, Cynthia Clemmons, Sharen Freeling, Brenda Moses; Paula Sabatelli, Aahren DePalma, Esq., and Bernard Manning*) good Plaintiff – Prosecutor hereby demands in good faith compensatory damages in the sum total of **$US25,000,000.00** (*Twenty-five Million United States Dollars and Zero Cents*) and asserts such Claim against their assets;

Of the CIGNA Corporation defendants (*CIGNA Corporation, Nicole Jones, Esq.*) good Plaintiff – Prosecutor hereby demands in good faith compensatory damages in the sum total of **$US2,500,000.00** (*Two Million Five Hundred Thousand United States Dollars and Zero Cents*), where such a sum will be levied on behalf of the People of the United States and paid directly to the United States Department of the Treasury and asserts such Claim against their assets;

Of the Bank of America Corporation defendants (*Bank of America Corporation, Terrance P. Laughlin*) good Plaintiff – Prosecutor hereby demands in good faith compensatory damages in the sum total of **$US2,500,000.00** (*Two Million Five Hundred Thousand United States Dollars and Zero Cents*) and asserts such Claim against their assets;

Of the American Arbitration Association defendants (*American Arbitration Association, Ann Lesser, Esq., Heather Santo*) good Plaintiff – Prosecutor hereby demands in good faith compensatory damages in the sum total of **$US100,000.00** (*One Hundred Thousand United States Dollars and Zero Cents*) and asserts such Claim against their assets;

Of all the defendants, good Plaintiff – Prosecutor hereby demands in good faith punitive damages in the sum total of **$US100,000,000.00** (*One Hundred Million United States Dollars and Zero Cents*) (where 25% of such monies collected will be allocated by Plaintiff to a standalone Fund to assist United States citizens in the pursuit and resolution of meritorious State or Federal litigation claims accrued in the context of employment controversies) and asserts such Claim against their assets;

For a total Demand of $US30,100,000.00 in compensatory and $US100,000,000.00 in punitive damages asserted against the defendants' assets – a sum-certain total of **$US130,100,000.00** in total monetary damages.

## V.   PLAINTIFF – PROSECUTOR'S CERTIFICATION

Good Plaintiff – Prosecutor, self-represented and destitute due to the damages inflicted by the defendants *en masse*, certifies to the best of his knowledge, information, and belief that the:

1. Complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation);
2. Litigation Claims are supported by existing law or by a non-frivolous argument to change existing law;
3. Factual contentions have baseline evidentiary support or will most certainly have full evidentiary support after a reasonable opportunity for further investigation or via formal Discovery processes; and
4. Complaint otherwise complies reasonably with the requirements of Federal Rule of Civil Procedure 11.

**WHEREBY** Plaintiff-Prosecutor now does request that Her Honour the Chief United States District Judge for the Southern District of New York dispatch immediately United States Marshals Service to Summon *personally* all the nefarious Named defendants to Court to Answer for their Crimes against him.


Dated:          This the 25th day of September in the year 2017
                New York County, New York


Duly Executed:

_____

Seth Mitchell, Plaintiff–Prosecutor & Sole Claimant,
*17-CV-1845 (CM), $US130.1 Million Litigation Claims*
208 East 51st Street, Suite 391,
New York County, New York, 10022
Direct: 1.646.801.2045
Email: seth.mitchell@ashemllc.co





From: **Seth Mitchell** seth.mitchell@bloomingdales.com
Subject: Employee relations concern...
Date: January 3, 2017 at 11:38
To: Richard Law Richard.Law@bloomingdales.com
Cc: seth.mitchell@ashemllc.co

Dear Richard,

Best wishes for the New Year and many apologies for reaching out once again with a very sensitive matter, but for Macy's, Inc. and I, I must document the following, now:

On at least three instances over the past several months I have been the purposeful victim of Associate Ms. Paula Sabatelli (lower level station on Floor 7) exposing her breast to me (literally), on the salesfloor.

The most recent occurrence was last week, and a witness with me when it happened was Ms. Karen Williams, although I'm not certain if she saw the act committed - however I did disucss this incident with her at a later time.

Thank you very much Richard for understanding that this Cannot happen again.

Seth


Seth Mitchell
Sales Generalist - Luxury Home
Bloomingdale's Flagship
1000 Third Avenue, Floor Seven
New York, New York 10022

Private Mobile: 1.646.801.2045





  

NEW REPORT   |   FOLLOW-UP REPORT   |   CODE OF CONDUCT   |   CONTACT LIST   |   HOME   |   CLOSE WINDOW

## ADDITIONAL REPORT DETAILS

Please provide any additional details for this report in the box below.

## ATTACHMENTS

To attach files related to the issue being reported, please click here.

Attachments are submitted with the report as a permanent record and can be viewed by all report recipients.

## REPORT HISTORY

| Date | Type | Details |
|---|---|---|
| 2017-01-27 13:36 | Details provided by reporter | What is your involvement in the issue? - It happened to me<br>Is this an ongoing issue? - Yes<br>What is the date of the most recent occurrence? - 1/27/17<br>Have you reported this issue to anyone within the organization? - Yes<br>Do you believe that anyone has taken steps to hide this issue? - Yes<br>Where did the issue occur? - Onsite<br>What is your relationship to the company? - Employee<br><br>Seth feels Ariana, Susan Schiller, Susan Wright, and Brittany have discriminated against him and harassed him because he is a Caucasian American male and over 45 years old. Seth has submitted evidence to this persons that his job performance is exemplary based on upon sales for the last year. Seth has been passed over for promotions and upward mobility because he is a Caucasian male. Only one other male has been promoted during Seth's time with the company, and this male is Brazilian and has less time in the company than Seth. Other women have been promoted within the company also.<br><br>Seth has documented with HR that he has non-physical disabilities that he needed accommodations for. Ariana, Susan Schiller, Susan Wright, and Brittany have ignored Seth's requests, and Seth feels subjected to unfair treatment and harassment due to the accommodation requests. The company has a zero tolerance policy for discrimination or harassment of any kind, but Seth said this policy has been violated over many months by these specific individuals and possibly other individuals. Seth has experienced horrific treatment on the job for at least six months and works in a hostile environment. |
| 2017-01-30 11:01 | Response provided by the organization | Thank you for taking the time and making the effort to report your concerns. The Company appreciates the steps you have taken to ensure that Company policies are upheld. An investigation was completed based on the information received. Appropriate action was taken in accordance with company policy. If you have further |

questions or concerns, please contact Richard Law at richard.law@bloomingdales.com.

| Submit report |
| --- |

Copyright © 20172017 Macy's and Global Compliance, Inc.
Global Compliance Privacy Policy
All Rights Reserved.

ATTESTED ON
22 APRIL 2017

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| Seth Mitchell<br>C/O Ashem L.L.C., 208 East 51st Street<br>Suite 391<br>New York, NY 10022 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| -20-2017-01750 | Sarina L. Shaver,<br>Investigator | (212) 336-3776 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          4/5/17
Kevin J. Berry,                                    (Date Mailed)
District Director

Enclosure(s)

cc:     Diana Obemuefemann
        Administrative Assistant
        MACYS INC
        Law Department
        611 Olive St, 17th Floor
        Saint Louis, MO 63101

## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**VATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within days of the date you** *receive* **this Notice**. Therefore, you should **keep a record of this date**. Once this 90- y period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to nsult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell m or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely anner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as dicated where the Notice is signed) or the date of the postmark, if later.

our lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate cate court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide ter talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short atement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of ur charge must be attached to the complaint you file in court. If so, you should remove your birth date from the harge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include ny matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters lleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in ome cases can be brought where relevant employment records are kept, where the employment would have een, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

RECEIVED ON
22 APRIL 2017



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

Seth Mitchell
C/O Ashem L.L.C., 208 East 51st Street
Suite 391
New York, NY 10022

Re:   EEOC Charge No. 520-2017-01750
      Mitchell v. Bloomingdales

Dear Mr. Mitchell,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information you submitted, and have determined that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the Commission. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights. If you want to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator Sarina Shaver at (212) 336-3776 if you have any questions.

Sincerely,

_____ for
Kevin J. Berry
District Director

4/5/17
Date

Enclosure(s):
    EEOC Form 161, "Dismissal and Notice of Rights"
    Copy of EEOC handout, "Facts About Filing"



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: BLOOMINGDALES
EEOC Charge No.: 520-2017-01750

April 5, 2017

Seth Mitchell
C/O Ashern L.L.C.,
208 East 51st Street Suite 391
New York, NY 10022

Dear Mr. Mitchell:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)
[ X ]   The Age Discrimination in Employment Act (ADEA)
[ X ]   The Americans with Disabilities Act (ADA)
[ ]      The Equal Pay Act (EPA)
[ ]      The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Sarina L. Shaver
Investigator
(212) 336-3776

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s):

cc:

USA-FORM 5 (11 AM)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 520-2017-0750 |

New York State Division Of Human Rights  and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Seth Mitchell | (646) 801-2045 | |

Street Address                           City, State and ZIP Code

C/O Ashem L.L.C., 208 East 51st St., Suite 391, New York, NY 10022

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MACY'S, INC., BLOOMINGDALE'S, INC. | 500 or More | 212.705.2455 |

Street Address                           City, State and ZIP Code

1000 Third Ave, New York, NY 10022

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                           City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☒ OTHER (Specify)  Protected Activity (Original EEOC Charge)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest        Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, Seth Mitchell, previously filed EEOC Charge # 520-2016-03830 against the Respondents in August 2016. Since filing that charge, I have been the victim of a host of illegal activities, including: Lack of Good Faith & Fair Dealing, Fraud, Retaliatory Discharge, Failure to Provide for Disability Accommodation, Unequal Pay, Defamation per se, Failure to Promote, Hostile Work Environment, Harassment (sexual and otherwise), Retaliation, Breach of Contract, Quantum Meruit/Unjust Enrichment, Intentional Infliction of Emotional Distress, Violation of 45 CFR §164.530(c) in concert with CIGNA Corporation, Misuse of material non-public information including United States Social Security Number, ERISA violations in concert with Bank of America/Merrill Lynch; at least.

Based on the above, I was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964 (as amended), Title I of the Americans with Disabilities Act of 1990 (as amended), and other applicable Federal, state, and local anti-discrimination statutes, aggrieving me severely and injuring irreparably.

MONIQUE CHANG ALMODOVAR
Notary Public - State of New York
NO. 01AL6349089
Qualified in Kings County
My Commission Expires Oct 11, 2020

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 21 Mar 17              Charging Party Signature  Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)  March 22, 2017. |

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle your charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.